**IN THE SUPERIOR COURT OF FULTON COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| DR. SRINIVAS GARIMELLA,<br><br>*Plaintiff,*<br><br>v.<br><br>BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA;<br>STATE OF GEORGIA;<br>GEORGIA INSTITUTE OF TECHNOLOGY;<br>PRESIDENT ANGEL CABRERA;<br>DANETTE JOSLYN-GAUL; and<br>JANE/JOHN DOES 1-3,<br><br>*Defendants.* | Civil Action No.  **2023CV389158**<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Dr. Srinivas Garimella ("Plaintiff" or "Dr. Garimella") submits the following Complaint against Defendants Board of Regents of the University System of Georgia ("BOR"), State of Georgia; Georgia Institute of Technology ("Georgia Tech" or "GT"); Georgia Tech President Angel Cabrera, Danette Joslyn-Gaul, and Jane/John Does 1-3.

## INTRODUCTION

Dr. Garimella, a Professor at Georgia Tech brings this action for breach of contract, declaratory judgment, and violation of the United States Constitutional right of due process under 42 U.S.C. 1983.

## JURISDICTION AND VENUE

1.

This Court has jurisdiction.

2.

Venue is proper.

1

## PARTIES

3.

Plaintiff Dr. Garimella is an adult citizen of the United States and a resident of the State of Georgia. Dr. Garimella submits himself to the jurisdiction of this Court.

4.

Defendant Board of Regents of the University System of Georgia is vested with the government, control, and management of the university system of Georgia and all of its institutions, including Georgia Institute of Technology. Defendant BOR's headquarters is located at 270 Washington Street, S.W., in Atlanta, Fulton County, Georgia. Defendant BOR may be served by delivering a copy of the summons and complaint to Dr. Sonny Perdue, Chancellor of the University System of the State of Georgia, 270 Washington Street, S.W., Atlanta, Georgia 30334; and by delivering a copy of same to Christopher McGraw, Vice Chancellor for Legal Affairs, at the same address; and by delivering a copy of same to the Office of the State Attorney General, 40 Capitol Square, S.W., Atlanta, Georgia 30334.

5.

Defendant Georgia Institute of Technology is a four-year college and a member of the University System of Georgia. Defendant GT may be served by delivering a copy of the summons and complaint to President Angel Cabrera at Carnegie Building, Georgia Institute of Technology, 223 Uncle Heinie Way, N.W., Atlanta, Georgia 30332.

6.

Defendant Dr. Angel Cabrera is the President of Georgia Tech and may be served by delivering a copy of the summons and complaint to him at Carnegie Building, Georgia Institute of Technology, 223 Uncle Heinie Way, N.W., Atlanta, Georgia 30332.

7.

Defendant Danette Joslyn-Gaul is General Counsel and Vice President for Ethics and Compliance at Georgia Tech and may be served by delivering a copy of the summons and complaint to her at Lyman Hall Building, Suite 305, Georgia Institute of Technology, 221 Uncle Heinie Way, Atlanta, Georgia 30332.

8.

Defendant State Of Georgia may be served by delivering a copy of the summons and complaint to Governor Brian Kemp at 206 Washington Street, Suite 201, State Capitol, Atlanta, Georgia 30334 to Service of Process Designee Rhonda Wilson.

9.

Defendants John/Jane Does 1-3: Plaintiff reserves the right to add additional Defendants once he obtains the information he has sought from Defendants. To date, Defendants have unlawfully denied him this information despite being contractually and constitutionally required to provide him with such.

**RELEVANT FACTS**

10.

Dr. Srinivas Garimella is a full Professor and the Hightower Chair in Engineering, faithfully serving Georgia Tech since 2003 where he arrived bringing with him ten graduate students and established the Sustainable Thermal Systems Laboratory. In the twenty years he has been at Georgia Tech, he has established one of the largest and most successful research programs across the college of engineering, typically advising a research group of 10 to over 20 M.S. and Ph.D. students and several undergraduate researchers (and for brief periods, two postdoctoral research associates, and one research engineer.) Annual research expenditures have typically been

in the range of $1-2 million. Thirty-five Ph.D. students and numerous M.S. students have graduated under his supervision.

11.

Dr. Garimella has always had stellar performance evaluations and accolades as a professor. He is one of the foremost authorities in the world in his pioneering research and while he has achieved prolific accomplishments and awards[1], what he is most proud of is how he has mentored over 75 postdoctoral researchers, research engineers and students pursuing their M.S. and Ph.D. degrees, with his research resulting in over 375 archival journal and conference publications, and three textbooks on Heat Transfer and Fluid Flow in Minichannels and Microchannels, Condensation Heat Transfer, and Heat Pumps.

12.

Dr. Garimella has a tenured employment contract with Defendants most recently for the 2023-2024 school year when this subject incident occurred. This contract expressly states that it: "is made expressly subject to the applicable state and federal laws and to the statutes and regulations of this institution as well as the bylaws, policies, and procedures of the Board of Regents, which can be found on the University System of Georgia website."

---

[1] He is the recipient of the National Science Foundation CAREER Award (1999), the American Society of Heating, Refrigerating and Air-Conditioning Engineers (ASHRAE) New Investigator Award (1998), the Society of Automotive Engineers Ralph E. Teetor Educational Award for Engineering Educators (1998), and was the Iowa State University Miller Faculty Fellow (1999-2000) and Woodruff Faculty Fellow (2003-2008) at Georgia Tech. He received the American Society of Mechanical Engineers (ASME) Award for Outstanding Research Contributions in the Field of Two-Phase Flow and Condensation in Microchannels, 2012 and the Prominent Researcher Award at the Micro Flow and Interfacial Phenomena Conference 2022 for sustained and outstanding contributions to the fundamentals of phase change heat transfer at mini- and micro-scales and coupled heat and mass transfer in binary fluids. He also received the Thomas French Distinguished Educator Achievement Award (2008) from The Ohio State University, the Zeigler Outstanding Educator Award (2012), and the Sigma Xi Sustained Research Award (2023) at Georgia Tech. He is a Fellow of the ASME and of ASHRAE, past Associate Editor of the ASME J. Heat Transfer, and Editor of the Int. J. Air-conditioning and Refrigeration. He has also served as Associate Editor of the ASME J Energy Resources Technology, and Past Chair of the Advanced Energy Systems Division of ASME. He was an Associate Editor of the ASHRAE HVAC&R Research Journal and was on the ASHRAE Research Administration Committee.

13.

On September 25, 2023, Defendants notified Dr. Garimella that he was being put on administrative leave despite being under contract as a full professor.

14.

Dr. Garimella was informed by his Chair "we have been made aware of investigative findings related to allegations regarding your conduct. The investigative findings include potential violations of Georgia Institute of Technology (Georgia Tech) and/or University System of Georgia (USG) policy." Dr. Garimella was never informed what these investigative findings were or what potential policy violations were implicated.

15.

Dr. Garimella has repeatedly asked the investigators and Defendants what these allegations and/or charges are and who the "complainant" is but has never been provided with answers.

16.

Defendants' policy demands that "the investigator must ensure that the investigation provides for due process."

17.

Dr. Garimella, through counsel, informed Defendants they had failed to meet a modicum of due process by failing to give him any notice and demanded that they provide him due process:

> "to date, the university has violated Dr. Garimella's Constitutional and contractual rights as the investigators have failed to provide any modicum of due process throughout the investigation. Prior to meeting with the "investigators," they informed Dr. Garimella that they could not provide him with any information as to the nature of the investigation or allegations made against him other than simply claiming a "concern," and even during the meeting, only stating that there was a suggestion of "inappropriate conduct" without providing any detail of what that is. Likewise, at the meeting, the investigators continued in their failure to provide him with proper due process, questioning him, but refusing to inform him of specifically what he is being accused of, the name of the complainant, what the charges are,

5

what he is alleged to have done, what policy is implicated, notice of what the specific allegations or policies contended to be violated are, what rights he has in the investigation and the procedure being followed or its timeline. Rather, this has been a one-sided star-chamber proceeding where apparently the "process" is to type up a 'draft report' and take the drastic and damaging action of putting Dr. Garimella on indefinite administrative leave without even letting the responding party be on notice of the charges or findings or have a chance to respond. Worse, you have informed him that you have a "duty to report the administrative leave to federal sponsors" harming Dr. Garimella's stellar professional reputation that he has taken a lifetime to build, in addition to tortiously interfering with important contractual relationships he has outside of the university all the while not even bothering to notify him of what he is being charged with."

18.

In response, Defendant Danette Joslyn-Gaul claimed that she would get back to Plaintiff on behalf of Defendants, yet she has failed to do so and, to date, no Defendants have responded to Dr. Garimella's repeated requests for due process.

19.

Despite Defendants Danette Joslyn-Gaul and President Angel Cabrera being notified they were violating Plaintiff's due process rights and repeatedly requested to provide Plaintiff with information including: informing him of specifically what he is being accused of, the name of the complainant, what the charges are, what he is alleged to have done, what policy is implicated, notice of what the specific allegations or policies contended to be violated are, what rights he has in the investigation, and the procedure being followed or its timeline, Defendants have failed to do so.

20.

Defendants Danette Joslyn-Gaul and President Angel Cabrera continue to fail to provide Plaintiff with proper notice or provide a response to the information he has sought above in paragraph 19 in violation of his due process rights and contractual rights.

21.

Nearly the entire fall semester has gone by, and Defendants have failed to respond to Dr. Garimella's repeated requests in breach of their contractual obligations and in violation of his Constitutional right to due process.

22.

Dr. Garimella suffered damages consisting of, but not limited to lost wages and other benefits of employment, loss of economic opportunities, harm to professional reputation, emotional distress, mental anguish, humiliation, and pain and suffering.

**SPECIFICALLY PLED DAMAGES ARE AS FOLLOWS:**

23.

At the time of being placed on administrative leave, Dr. Garimella was managing a portfolio of diverse research programs funded by federal agencies and industry and advising a team of nine M.S. and Ph.D. students. Dr. Garimella alerted the Defendants of the harm he was being subjected to, sending the following via email to the President:

"Dear President Cabrera:

I am writing to you about Georgia Tech having placed me on administrative leave on September 25, 2023 without any explanation. It pains me greatly to write to you about the institute's failure to provide me with the professional courtesy of a response or comply with my constitutional entitlement to due process despite my repeated requests. To protect the interests of my students, the institute, and my own life's work dedicated in service to Georgia Tech, I am left with no choice but to seek judicial intervention. Not only has this has been extremely detrimental to me but to our institution, and most importantly, our students. I ask that you exercise your leadership to intervene immediately in this urgent matter and fairly resolve it to address the terrible damage that is being incurred, including but not limited to:

1. **Research Projects**

   **US Department of Energy (DOE)/Saint Gobain:** This ongoing $2.85 million project funded by the USDOE in collaboration with Saint Gobain, the largest manufacturer of drywall in the world, to reduce water and energy consumption in the manufacture of drywall, has critical deliverables and Go/No Go milestones. Without my involvement [hereinafter Dr. Garimella's] active involvement with the PhD students and the industry partner, progress has stalled, leading to the risk of termination by the US DOE.

   **Carrier Corporation:** This ongoing $250,000 project with one of the largest manufacturer of chillers and air-conditioning systems in the world is optimizing the performance of industrial chillers over their lifetimes by combining Dr. Garimella's expertise in the thermal sciences with Artificial Intelligence and Machine Learning (AI/ML), thereby developing techniques and tools for dynamic modeling and optimization. Without Dr. Garimella's regular input and participation in the biweekly meetings with the sponsor, the inexperienced (1st and 2nd year MS) students cannot independently work with the sponsor and take decisions to proceed with the research. Progress is severely hindered. Discussions to continue the research with additional funding (>$250,000), which were at an advanced stage, cannot continue due to the administrative leave, the project could be terminated.

   **Office of Naval Research/West Coast Solutions/Elementum**: This initial $49,950 phase of a project with tight deliverables in collaboration with a small business and an additive manufacturing company ends in Jan 2024. Dr. Garimella's constant involvement and guidance for the first-year MS student on AI/ML techniques to develop ultra-compact condensers for Naval applications is essential to meet project deliverables. A follow-on project of a much higher budget, which could be as much as $750K, is contingent on the results of this phase, which is severely jeopardized due to his absence.

   **United States–India Science & Technology Endowment Fund (USISTEF)/NewLeaf Dynamic**: This $179,500 ongoing project in collaboration with NewLeaf Dynamic company in New Delhi is extending the shelf life of produce, milk and other perishables in developing countries without reliable access to electricity, using locally sourced biomass, solving a major problem in food supply and the livelihood of farmers. Dr. Garimella is unable to advise students on the experiments and analyses; therefore, deliverables will not be met on time.

   **US Department of Energy BENEFIT program** (in collaboration National Renewable Energy Laboratory, Gas Technology Institute, and Carrier Corporation): Dr. Garimella is co-principal investigator for this $3 million project that has been selected for award by the USDOE to develop an efficient heat pump coupled to thermochemical storage. Final budget negotiations were

underway when he was placed on administrative leave. The project was supposed to start in January 2024, and with his research group being a key contributor to the project, it will be in jeopardy, as will his ability to support the graduate students slated for this project.

**Nuclear Regulatory Commission**: This $500,000 project ended at the end of September, while Dr. Garimella was on administrative leave. The final report is due in December, 2023, and the experiments had shown some difficult-to-interpret results. The PhD student on the project is pursuing additional experiments independently without access to Dr. Garimella's guidance, which is sorely needed to resolve these puzzling results. Project deliverables and the final report will be compromised due to the administrative leave.

2. **Research Funding Proposals**

    The solicitation for the **US Department of Energy BENEFIT** proposals for 2024 has been released, with topics for which Dr. Garimella's group is a world leading authority, e.g., Heating, Ventilation, and Air Conditioning and Water Heating. The deadline for concept papers is December 18, 2023. He stands to lose the opportunity to bid for projects with budgets of up to $2 million in his core area of expertise.

    **Tokyo Tech/Ricoh:** Dr. Garimella was scheduled to host a delegation led by Prof. Fushinobu of Tokyo Tech with representatives from the major multinational corporation Ricoh (Nov 2 and 3, 2023), who wanted him to help them set up a long-term research collaboration with his lab as well as other faculty across the college of engineering. He was not allowed to host this visit, thereby losing the opportunity for long-term research leadership and funding.

    **Hyundai Motor Company:** Dr. Garimella submitted a $439,995 proposal on Pressure Swing Adsorption for Simultaneous Removal of Ammonia and Nitrogen from an Ammonia Cracking Process to Hyundai on Sept 22, 2025. Without access to Georgia Tech credentials, he is unable to receive feedback or funding decisions by Hyundai, and its status is unknown.

    **Engineering and Physical Sciences Research Council (EPSRC) UK and National Science Foundation USA:** Dr. Garimella submitted a proposal on adsorption and absorption based thermochemical heat storage and upgrade in collaboration with Warwick University with a $500,000 budget for his group. It was under review, but the status of the review and funding decisions is unknown due to the administrative leave. He stands to antagonize and lose the opportunity to work with a prominent collaborator with whom his group has been working for over two years.

9

**Engineering and Physical Sciences Research Council (EPSRC) UK and National Science Foundation USA:** Dr. Garimella has been working on this proposal with a $500,000 budget for his group with Edinburgh University and Saint Andrews University on low-grade waste heat recovery based on microscale systems developed by him in the past. Other companies in the UK and research organizations from Germany were also involved. This proposal effort has been suspended because of his unavailability, depriving this multinational group of an excellent opportunity to address energy-related research.

3. **Student Advising/Productivity/Recruitment**

Dr. Garimella is advising a group of 9 students, with one 5th year PhD student, one 4th year PhD student, one 3rd year PhD student, two 2nd year PhD students, one 2nd year MS student, one 1st year MS student, and two very new PhD students that joined the group in Fall 2023. These students are from the US, Ireland, India, and Turkey.

The 5th year PhD student was supposed to present his PhD proposal in November, but Dr. Garimella's unavailability will delay his graduation.

The 4th year PhD student needs critical advice in interpreting and modeling experimental results, without which his graduation will be delayed.

The 3rd year PhD student has been working on the USDOE/Saint Gobain Project, the USISTEF project, and also helping the new students get familiar with the upcoming USDOE BENEFIT project. Lack of access to Dr. Garimella affects all these efforts and delays his progress toward his PhD.

The 2nd year PhD student has been pressed into service as the instructor of record for the class he was teaching, which has a heavy design project and teamwork load. This responsibility during the second year of graduate school adds considerable stress for the student and adversely affects his effort on research projects, detracting from the ability to deliver project results in a timely manner. Due to these additional burdens and hurdles, he may well decide to revert to an MS student status, and leave the group soon.

The other 2nd year PhD student came to Georgia Tech from Ireland in Fall 2022 specifically to work with Dr. Garimella on thermochemical storage and adsorption heat pumping. Without access to Dr. Garimella, she will be lost and progress will suffer, and will probably leave the group and Georgia Tech if this situation is not resolved.

The 2nd year MS student is facing unique challenges and without Dr. Garimella's constant advice and mentoring, his wellbeing and graduation in Spring 2024 will be adversely affected.

The 1st year MS student has little background in his complex MS thesis project subject. Lack of constant access to Dr. Garimella must be severely affecting his progress, and he may seek an alternative adviser and project to finish his MS degree program.

The 1st year PhD students, from India and Turkey, are confronted with the loss of access to their adviser within just about a month of arrival and must be terrified at this development. They will both most certainly move to another research group or seek admission to a different university.

Dr. Garimella recruited a PhD student from the Indian Institute of Technology Kanpur, who was scheduled to join his group as a postdoctoral research associate in January 2024. Since he has no access to his emails, he has no contact with this student, and the student has probably decided to join another group or university. A faculty member at the National Institute of Technology, Rourkela, India was scheduled to join Dr. Garimella's group in November 2023 as a visiting professor. This arrangement is also not possible due to the administrative leave, thwarting efforts to develop long-term research collaboration and educational exchanges.

One of the most effective recruitment tools for graduate students and postdoctoral research associates is the frequent emails from prospective candidates from around the world or recommendations from their advisers known to Dr. Garimella. This avenue has been cut off due to lack of access to GT credentials, shutting down all recruitment efforts.

4. **Publications**

From 2020 onwards, Dr. Garimella has published 75 journal papers and one book, with several additional papers in various stages of the publication process. This administrative leave has seriously curtailed that activity. Without the ability to work with students and collaborators, this drastic drop in productivity seriously affects his presence in the field and his reputation, ultimately making it impossible to conduct new research and maintain his prominence in his fields of expertise.

5. **Conference Attendance**

Canceled discussions on the topic of Waste Heat Recovery with researchers at the Indian Institute of Technology, Tirupati from Oct 5-16, 2023. Major exposure to researchers across India and potential research funding and collaboration possibilities lost. Opportunities to recruit PhD students and postdoctoral research associates lost. Net honorarium of approximately $3600 lost.

Canceled discussions and a talk at the Tokyo Institute of Technology Academy for Super Smart Society (WISE-SSS) Global Forum in Tokyo, Japan (Nov 1-7, 2023) in Dr. Garimella's role as member of their advisory board.  Lost the opportunity to interact with consortium members from Tokyo Tech and other prominent universities in Europe and other regions, and visits to research sites.  Lost the opportunity to mentor faculty and students at Tokyo Tech.

Canceled an invited keynote talk at the 27th International Congress of Mechanical Engineering (COBEM 2023) in Florianopolis, Brazil (Dec 4th to 8th, 2023.)  Lost the opportunity to discuss collaborative research and teaching programs and student exchanges with Brazilian Universities.

If this situation is not resolved in the next 4-5 days, will have to cancel a plenary talk at the 27th National and 5th International ISHMT-ASTFE Heat and Mass Transfer Conference, Dec 14-17 2023 at the Indian Institute of Technology, Patna. Will lose the opportunity to recruit PhD students and postdoctoral research associates from the best Indian universities.

These activities did not even involve GT faculty, staff, or students, and 1-3 were funded by the hosts.  Despite this, Dr. Garimella was explicitly prohibited from participating in these events.  Loss of face with all these conference and meeting organizers for canceling long planned commitments close to the dates of the events, causing them to scramble for alternative arrangements, thereby drastically reducing the likelihood of such interactions and opportunities in the future.

6. **Reputation**

Dr. Garimella's absence from the research, teaching, and mentoring arena incurs intangible costs every single day that he is on administrative leave. Emails received from around the world generate a cryptic automatic reply stating that he is unavailable, and the sender must contact the school chair or the HR person, which is very easy to interpret as something being seriously amiss.  Collaborators, other researchers in the field from across the world, advisory boards, journal and conference organizers, current and prospective students, colleagues, being aware of this situation, would shy away from working with Dr. Garimella.  Delinquency and inability to deliver results on various contractual obligations with sponsors would establish a record of nonperformance, sabotaging his ability to obtain future funding from these and other sponsors, fast bringing his entire research and academic enterprise to a grinding halt.  It is difficult to overestimate the long-term deleterious effects of even a week of his being in this situation without access to Georgia Tech credentials.

7. **Financial Implications**

Administrative leave shuts down Dr. Garimella's ability to obtain new research funding due to not being able to bid on funding solicitations, and also termination of current projects based on nonperformance. He would also have to rebuild the group back to the current state and procure materials and supplies and equipment to restart the research program. Other costs include summer support and travel costs for Dr. Garimella and his group. The respective costs are outlined below.

In 30 years of his academic career, Dr. Garimella has procured funding to support himself for the summer months every single year. Administrative leave shuts down his ability to obtain research funding, which makes it impossible for him to procure funding for summer support for at least two years. At his current salary, this amounts to base salary costs of $82,418 per summer, which for two summers, translates to **$361,452** including fringes and indirect costs.

Inability to procure research funding also prevents Dr. Garimella from being able to buyout of teaching for one course per year, which at 1.25 months salary per course bought out amounts to **$150,605** for the estimated two years it would take for him have adequate funding after this interruption.

Decimation of the research group because they would find alternative advisers or universities due to lack of access to an adviser means that Dr. Garimella would have to re-establish the group to at least its current level, without access to external research funding. Loss of a whole 5-year cohort of graduate students means that he would have to initially hire research engineers to start re-establishing his program without access to graduate students trained over several years, and also the impossibility of finding ten graduate students interested in the thermal energy systems arena, all in one recruitment year. To support a nominal two research engineers at a salary of $100,000/year and 6 graduate students at a stipend of the school mandated $2600/month and tuition remission of $1,557/month for a period of two years until the research program is re-established, including the applicable fringe and indirect rates, would cost **$877,112** for the research engineers, and **$893,090** for the graduate students.

Based on his ongoing research expenditures, to maintain his experimentally oriented research program without external funding would cost $100,000 in equipment and $150,000 in materials and supplies per year, for a total including the applicable indirect costs, of **$699,500** for two years.

Travel to domestic and international conferences and meetings by Dr. Garimella and his students and research engineers is conservatively estimated based on ongoing expenditures at $25,000 per year, which, including the applicable indirect rates, would cost **$83,200** for two years.

> Travel costs already incurred due to nonrefundable airline tickets to conferences that had to be cancelled are **$3100.**
>
> Assuming prompt reinstatement without protracted litigation, attorney costs incurred are expected to be **$30,000.**
>
> If Dr. Garimella were to no longer be with Georgia Tech, the associated loss of reputation in the professional and academic circles would lead to the loss of ability to find a commensurate position at another university or to find consulting work at his current income level. At his annual (12-month) income of $329,671, including fringes and an indirect rate of an estimated 20% as a consultant, for his anticipated professional career until age 75, twelve years of lost income plus already incurred costs for travel would amount to at a minimum of **$6,255,238. This does not include attorney fees and cost of litigation which could incur an additional one million.**
>
> At a minimum, The total financial costs, if Dr. Garimella is promptly reinstated, would be **$3,098,119.** The total financial costs, if Dr. Garimella is separated from Georgia Tech, would be **$8,856,094."**

**Dr. Garimella reserves the right to amend these calculations once Plaintiff's economist expert calculates tax implications into these equations.**

## COUNT I
## BREACH OF CONTRACT

*Against the State of Georgia, Board of Regents for the University System of Georgia, and Georgia Institute of Technology*

24.

Plaintiff fully incorporates paragraphs 1-22, *and any paragraph this Court deems relevant*, as fully stated herein to support Plaintiff's Count I.

25.

The defense of sovereign immunity is waived as to any action ex contractu for the breach of any written contract existing on April 12, 1982, or thereafter entered into by the state, departments and agencies of the state, and state authorities. O.C.G.A. § 50-21-1.

26.

In the 2023-2024 year, Defendants and Plaintiff were entered into a tenured employment contract.

27.

By suspending Plaintiff by placing him on leave Defendants breached Plaintiff's contractual rights.

28.

Defendants' breach of contract proximately caused damage to the Plaintiff including but not limited to lost wages, lost benefits, and attorney fees.

## COUNT II
## VIOLATION OF DUE PROCESS FOURTEENTH AMENDMENT PURSUANT TO 42 U.S.C. §1983

*Against individually named Defendants President Angel Cabrera and Danette Joslyn-Gaul*

29.

Plaintiff fully incorporates paragraphs 17-19, *and any paragraph this Court deems relevant*, as fully stated herein to support Plaintiff's Count II.

30.

Defendants violated Plaintiff's due process rights under the Fourteenth Amendment to the United States Constitution, which rights may be enforced pursuant to 42 U.S.C. §1983.

31.

As a direct and proximate result of Defendants' violation of 42 U.S.C. §1983, Plaintiff suffered damages consisting of, but not limited to, lost wages and other benefits of employment, emotional distress, mental anguish, humiliation, and pain and suffering.

## COUNT III
## DECLARATORY JUDGMENT per the Constitution of the State of Georgia Art. I, § 2, ¶ V

### *Against the State of Georgia*

32.

Plaintiff fully incorporates paragraphs 1-21, *and any paragraph this Court deems relevant*, as fully stated herein to support Plaintiff's Count III.

33.

Per the Georgia constitution, sovereign immunity is waived for actions seeking declaratory relief from acts of the state or an agency and the Court awarding declaratory relief may also enjoin acts to enforce its judgment.

34.

Plaintiff seeks declaratory judgment against Defendant and for this Court to enjoin the Defendant from continued violation of the Plaintiff's rights, to reinstate Plaintiff's employment, to declare Defendant is in breach of Plaintiff's contract, and to pay all of Plaintiff's damages including attorney fees.

35.

As a direct and proximate result of Defendants' violating rights of Plaintiff suffered damages consisting of, but not limited to, lost wages and other benefits of employment, emotional distress, mental anguish, humiliation, and pain and suffering.

## COUNT IV
## ATTORNEY FEES

36.

By this reference, the preceding paragraphs are hereby incorporated as if fully set forth herein.

37.

Defendants' breach of contract has been stubbornly litigious, causing Plaintiff unnecessary trouble and expense, entitling Plaintiff to recover expenses of litigation and attorney fees. Plaintiff seeks fees under O.C.G.A. §13-6-11 and 42 U.S.C. §1988.

38.

Plaintiff reserves the right to amend his complaint to substitute individual defendants with the Jane/John Doe's 1-3 once he obtains discovery.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following:

(a)  Judgment in Plaintiff's favor against Defendants on the above Counts.

(b)  That the Court issue a Declaratory Judgment and injunctive relief that the acts, policies, practices, and procedures of the Defendants complained of herein violated Plaintiff's rights to due process of law under the United States and Georgia Constitutions, respectively, reinstate Plaintiff, restore Plaintiff's employment and pension benefits, and enjoin Defendants from further acts, practices and policies that violate said law and retaliatory conduct in the future; and that this Court retain jurisdiction over this action until Defendants have fully complied with the Orders of this Court and that the Court require Defendants to file such reports as may be necessary for the Court to supervise compliance;

(c)  That judgment be awarded to Plaintiff against Defendants for compensatory damages in an amount reasonable and commensurate with the economic losses that he suffered as a result of Defendants' legal violation and the pain and emotional distress, humiliation, and loss of reputation imposed upon him by Defendants'

unconstitutional acts, and all other sums and relief to which Plaintiff is entitled under 42 U.S.C. §1983, including, but not limited to attorneys' fees, costs, and disbursements.

(d) Front pay and benefits;

(e) Back Pay, Compensatory Damages

(f) Punitive Damages against Defendants individually.

(g) A jury trial on all issues so triable.

(h) Such additional relief as the Court deems proper and just, including but not limited to equitable and injunctive relief.

Respectfully submitted this 20th day of November 2023,

**WILLIAMS OINONEN LLC**

/s/ JULIE OINONEN
Julie Oinonen (Ga. Bar No. 722018)
*Counsel for Plaintiff*

3344 Peachtree Rd NE, Suite 800
Atlanta, Georgia 30326-4807
(404) 654-0288/ (404) 592-6225 FAX
julie@goodgeorgialawyer.com